**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Andre Tate, *et al*.,                                   :
                                                                     :        Case No. 2:23-cv-00492
                          Plaintiffs,                      :
                                                                     :        Judge Michael H. Watson
               vs.                                           :
                                                                     :        Magistrate Judge Elizabeth Preston Deavers
City of Columbus, *et al.*,                        :
                                                                     :
                          Defendants.                   :

## DEFENDANTS ANDREW GINTHER, ROBERT CLARK, NED PETTUS, DOUGLAS SARFF, KATHLEEN BOURKE COURTNEY MCHENRY AND THE CITY OF COLUMBUS'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants Andrew Ginther, Robert Clark, Ned Pettus, Douglas Sarff, Kathleen Bourke, Courtney McHenry, and the City of Columbus (collectively, "Defendants"), by and through counsel, respectfully move this Court for dismissal of Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12 (c), 8(a), and the United States Supreme Court's decision in *Ashcroft v. Iqbal*, which requires complaints to contain more than bare assertions. *Ashcroft*, 129 S. Ct. 1937 (2009). The grounds in support of this Motion are more fully set forth in the Memorandum in Support attached below.

Respectfully submitted,

/s/ *Melvin J. Davis*
Melvin J. Davis (0079224)
Thomas N. Spyker (0098075)
Reminger Co., L.P.A.
200 Civic Center Drive, Suite 800
Columbus, Ohio 43215
(614) 228-1311; FAX (614) 232-2410
e-mail:  mdavis@reminger.com
            tspyker@reminger.com
*Attorney for Defendants City of Columbus,*
*Andrew Ginther, Robert Clark, Ned Pettus,*
*Douglas Sarff, Kathleen Bourke and*
*Courtney McHenry*

<u>MEMORANDUM IN SUPPORT</u>

## I.    INTRODUCTION

Plaintiffs amended their original Complaint intending to artfully plead around the threshold legal issues raised by these Defendants in their prior MJOP. However, the new allegations do not cure the issues previously raised. Plaintiffs still seek to hold these Defendants liable for discipline they did not pursue against Co-Defendant Melissa McFadden ("McFadden"). Indeed, the gravamen of Plaintiffs' Amended Complaint remains that these Defendants did not take harsh enough disciplinary actions against McFadden as it relates to a 2018 internal affairs investigation of conduct that allegedly occurred when she supervised Plaintiffs from <u>2016-2017</u>. These claims are still untimely, and Plaintiffs still fail to plead any plausible causes of action against the City of Columbus or these individual defendants.

The Amended Complaint attempts to weave in vague accusations of conduct extending beyond the time-barred period actually at issue. But these matters were not within the scope of Plaintiffs' EEOC Charges and further do not allege any plausible cause of action. Consequently, for these reasons, as outlined below, judgment on the pleadings is proper.

## II.    FACTUAL ALLEGATIONS[1]

### A.  The Amended Complaint is based on acts allegedly occurring in 2016 and 2017.

Plaintiffs' Amended Complaint retains the allegations of the original complaint, affirming that this matter revolves around McFadden's 2016-2017 tenure as the patrol lieutenant of Zone 2 and the City's subsequent investigation and discipline of her related to that assignment. (*See generally,*

---

[1] The facts contained herein are those the Court may consider at this stage, pursuant to Rule 12(C). The facts outlined in Plaintiffs' Complaint are taken as true for the purpose of this Motion only. This recitation of facts is neither an endorsement of, nor admission to, anything pled in the Amended Complaint not otherwise admitted in Defendants' Answer.

Am. Compl., ECF: #34). Specifically, the factual allegations center on a period when McFadden supervised Plaintiffs, and their dissatisfaction with the discipline of McFadden following an Internal Affairs Bureau ("I.A.B.") investigation. (*Id.* at PageID #232, ¶¶ 30-51).

In March 2016, McFadden was assigned as the patrol lieutenant of Zone 2, a geographical area of the city patrolled by the Division of Police. (*Id.* at PageID: #232, ¶ 29). In February 2017, the new Zone 2 commander became aware of allegations that McFadden had acted abusively and discriminatorily toward those working under her supervision. (*Id.* at ¶ 30). An investigation into McFadden's conduct followed. (*Id.*, at ¶ 31). Plaintiffs contend that during the investigation they came forward to recount incidents of intimidation, racially divisive comments, and disparate treatment based on race, and described a hostile work environment based on race. (*Id.* at ¶ 31). The specific allegations made by each Plaintiff are broken down below.

### 1. Andre Tate

Plaintiff Andre Tate ("Tate") alleges that on January 25, 2017, he met with McFadden who gave him a "*more favorable* evaluation" because he is an African American." (*Id.* at PageID #233, ¶¶ 32-35) (emphasis added). Further, Tate alleges that in June 2021, he was "forced to decline a highly desirable position" because he feared working for McFadden although McFadden was no longer his supervisor. (*Id.* at PageID # 243, ¶ 87).

### 2. Levon Morefield

Plaintiff Levon Morefield ("Morefield") alleges that on March 6, 2017, he reported to a supervisor that he had been a victim of hostile work environment based on race. (*Id.* at PageID # 233, ¶ 36). According to Morefield, in 2016 McFadden had commented that his friends were unhappy that he had married a white woman and made other racially toned comments. (*Id.* at ¶¶ 37-39). Morefield further alleges that in 2015-2016 McFadden counseled him to file "unmerited and

frivolous EEOC related complaints against supervisors…" (*Id*. at PageID #237, ¶ 57). Then as a result of McFadden's comments, Morefield alleges that he left a position on Zone 2 in 2016. (*Id*. at PageID #234, ¶ 40).

Despite leaving the Zone in 2016, Morefield goes on to allege that "[a]fter September 10, 2020 and into 2021" he was "denied any meaningful opportunity to interview" for temporary and permanent positions in the Recruiting Unit. (*Id*. at PageID #243, ¶ 88). Morefield also alleges that in August 2022, he applied for an assignment as Digital Forensic Sergeant. (*Id*. at PageID #246, ¶ 102). After being selected, Morefield alleges that McFadden was assigned to supervise this unit while his transfer was pending. (*Id*.). Finally, Morefield alleges that in late 2022, he reported misconduct within his unit, ultimately resulting in McFadden launching a retaliatory investigation into him. (*Id*. at ¶¶ 103-104).

### 3. Anthony Johnson

Plaintiff Anthony Johnson ("Johnson") claims that on March 16, 2017, he reported that he was a victim of hostile work environment based on race and subjected to racially discriminatory comments from McFadden. (*Id*. at PageID #234, ¶ 41). According to Johnson, he was required to meet with McFadden during which times she made several race-based comments including "we (black) officers have to stick together." (*Id*. at ¶¶ 42-45).

Johnson, like Morefield, alleges that "[a]fter September 10, 2020 and into 2021" he was "denied any meaningful opportunity to interview" for temporary and permanent positions in the Recruiting Unit. (*Id*. at PageID# 243. ¶ 88).

### 4. Jeff Kasza

Plaintiff Jeff Kasza ("J. Kasza") claims that in June 2017, he reported that he was subjected to a hostile work environment and racially discriminatory comments from McFadden. (*Id*. at PageID

#235. ¶ 46). He does not provide any further details, but it is generally alleged that McFadden made public statements that African American males were unfairly targeted by white officers. (*Id*. at PageID #236, ¶ 52). Additionally, J. Kasza alleges – without providing any factual detail – that he and other white officers were targeted by investigations and threatened with discipline. (*Id*. at PageID #241, ¶ 76).

### 5. Amanda Kasza

Plaintiff Amanda Kasza ("A. Kasza") alleges that on or around April 28, 2016, McFadden denied her the opportunity to serve on a new officer selection board. (*Id*. at PageID #236, ¶ 51). Additionally, A. Kasza alleges – without providing any factual detail – that she and other white officers were targeted by investigations and threatened with discipline. (*Id*. at PageID #241, ¶ 76).

### 6. Lee Hurst

Plaintiff Lee Hurst ("Hurst") alleges that in 2016 McFadden argued with community members at a public meeting, stating that fewer officers are better and that officers will only arrest "blacks" and "poor people." (*Id*. at PageID #235, ¶ 49). Hurst further alleges that in 2021 and 2022 he was "forced to pass on desirable positions" throughout the department because he would have been required to report directly to McFadden. (*Id*. at PageID #245, ¶¶ 97-98).

### 7. Frank Miller and Bryan Mason

Plaintiffs Frank Miller ("Miller") and Bryan Mason ("Mason") allege that in September 2020, McFadden authored a book that publicly disparaged and attacked the Division of Police, including themselves, as racists. (*Id*. at PageID #240, ¶ 74). Miller and Mason further allege that after "September 10, 2020 and throughout 2021" they suffered a hostile work environment because of McFadden's public comments about race. (*Id*. at ¶ 75).

### 8. Paul C. Tobin and Alex Mottinger

Plaintiffs Paul Tobin ("Tobin") and Alex Mottinger ("Mottinger") allege that they advised the City of Columbus that McFadden perpetuated a hostile work environment based on race and made them fearful of engaging in proactive police work but do not provide any further details. (*Id.* at PageID #236, ¶ 54).

Mottinger further alleges – without any specific factual detail – that after "September 10, 2020 and throughout 2021, and to present" he was targeted and suffered "unjustified investigations, discipline, denials of promotion, and career disadvantages…" (*Id.* at PageID #241, ¶ 77). Finally, Mottinger alleges that he was the target of a retaliatory investigation in February 2021, resulting in charges of "Unbecoming Conduct." (*Id.* at PageID #245, ¶ 99).

### 9. Brian Steel

Plaintiff Brian Steel ("Steel") makes a single factual allegation – without providing any factual detail – that "from September 10, 2020 through 2021 and to the present" he and other white officers suffered "unjustified investigations, discipline, denials of promotion, and career disadvantages" from reporting the hostile work environment. (*Id.* at PageID #241, ¶ 76). Miller, Mason, Tobin, J. Kasza, A. Kasza and Hurst join this allegation. (*Id.*).

**B. In March 2017 McFadden is relieved from her position as the patrol lieutenant of Zone 2 while the City investigates complaints about her conduct in that post.**

On January 29, 2017, Commander Rhonda Grizzell ("Grizzell") was assigned to Zone 2. (*See* I.A.B. Report, ECF: #34-3 at PageID #296).[2] On March 7, 2017, Grizzell requested I.A.B. investigate McFadden after speaking with current and former Zone 2 officers, including Tate and

---

[2] As an attachment to Plaintiff's Amended Complaint the Court may consider this report in deciding this motion. *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir.2008) ("matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account" when considering a Motion for Judgment on the Pleadings").

Morefield. (*Id*. at PageID #381-386). On March 10, 2017, Grizzwll relieved McFadden from her position as the Zone 2 patrol lieutenant and reassigned to the property room. (*Id*. at PageID #399; see also, Relief of Assignment, ECF: #34-3 at PageID # 400).

The I.A.B. investigation concluded on February 9, 2018, with a recommendation sustaining three charges of misconduct against McFadden. (*See* Am. Compl., ECF: #34 at PageID: #238, ¶ 61; *see also*, I.A.B. Report, ECF: #34-3 at PageID: #303-306; 370-376). After the investigation, then-Police Chief Kimberly Jacobs sustained the three charges, recommending that McFadden be suspended, demoted, and terminated. (See Am. Compl., ECF: #34 at PageID: #238, ¶ 65; *see also*, Jacobs Recommendation, ECF: #34-3 at PageID #401-402).

On June 4, 2018, McFadden initiated a lawsuit against the City over her reassignment and the subsequent disciplinary issues. *See generally, Melissa McFadden v. City of Columbus*, Case No. 2:18-cv-00544, filed June 4, 2018. (Hon. J. Sargus, presiding).[3]

On October 9, 2018, Defendant Ned Pettus ("Pettus"), who was the Director of Public Safety at the time, dismissed the three disciplinary charges against McFadden, finding the Division of Police had not met its burden of proof. (*See* Director's Finding, ECF: #34-5 at PageID: #404-406). McFadden was restored to her prior position without further discipline. (*See* Am. Compl., ECF: #34 at PageID: #239, ¶¶ 67-69). Pettus then met with certain Plaintiffs and supported their transfer to assignments that were not under McFadden's supervision. (*Id*. at ¶ 72).

Plaintiffs claim that despite the reassignments, Defendants Andrew Ginther ("Ginther"), Pettus, Douglas Sarff ("Sarff"), and Kathleen Bourke ("Bourke") allowed McFadden to publicly disparage, attack, and retaliate against persons connected with the internal investigation. (*Id*. at ¶ 69).

---

[3] The Court may consider this on a 12(c) Motion without converting it to a Motion for Summary Judgment as it is a matter of public record. *See Barany-Snyder, surpa.*

Plaintiffs do not provide any details of the supposedly disparaging conduct that was allowed to occur other than the book McFadden authored in September 2020. (*Id*. at ¶ 73)

### C. Nearly three years after the fact, Plaintiffs file EEOC Charges centered on McFadden's 2016-2017 conduct and the City's subsequent investigation.

Plaintiffs allege they filed their EEOC Charges on or about July 7, 2021. (Am. Compl., ECF: # 34 at PageID: #232, ¶ 25). The Charges themselves, now attached to the Amended Complaint, indicate they were signed by the Plaintiffs between July 21, 2021, and November 6, 2021. (*See* Plaintiffs' EEOC Charges, ECF: #34-1 at PageID: #264-282). The eleven Charges are identical in substance, focusing on McFadden's 2016-2017 conduct and complaining of the City's failure to discipline her. (*Id*.). The Charges do not raise any issues occurring after McFadden was relieved from her post, and instead specifically point the EEOC to the City's I.A.B. report. (*Id*.). On November 15 and 16, 2022 the EEOC issued Right to Sue Letters. (*See* Right to Sue Letters, ECF: #34-2 at PageID: #283-293).

### III. LEGAL STANDARD

After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). While the allegations in the complaint are the primary focus in assessing a Rule 12(c) motion, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). The standard of review for a Rule 12(c) motion is the same as for a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). To survive such a motion, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Hensley Mfg. v.*

*ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

### IV.     LAW AND ARGUMENT

####     A.  Plaintiffs' Amended Complaint operates as a dismissal of several claims.

As an initial matter, it must be noted that Plaintiffs' filing of the Amended Complaint operated as a dismissal of several claims, previously pending before the Court. It is axiomatic that an amended complaint completely supersedes the original filing and prior complaints cease to have any legal effect. *See Braun v. Coulter Ventures, LLC*, S.D.Ohio No. 2:19-cv-5050, 2020 U.S. Dist. LEXIS 184414, at *9 (Oct. 5, 2020); *see also*, *Van Vels v. Betten*, W.D.Mich. No. 1:06-cv-710, 2007 U.S. Dist. LEXIS 63118, at *2 (Aug. 27, 2007), fn. 1 (collecting cases).

This well-settled point bears mention for two reasons. First, Plaintiffs' original complaint included party-Plaintiff Trent Taylor ("Taylor"). (*See generally*, Compl., ECF: #1). Comparatively, the Amended Complaint omits Taylor from not only the caption but also the body—his name does not appear once. (*See generally*, Am. Compl., ECF: #34). Taylor's omission from the Amended Complaint operates as a dismissal of any claims he previously raised in this matter. *See Brown v. Mohr*, S.D.Ohio No. 2:13-cv-006, 2014 U.S. Dist. LEXIS 152356, at *12 (Oct. 24, 2014) (a party omitted from an amended complaint is no longer a party to the case).[4]

Second, the Amended Complaint expressly narrows the scope of Counts I, II, and III to the City of Columbus, only. (*See* Am. Compl., ECF: #34, PageID: 247-254). Thus, to the extent Counts I-III were previously alleged against the individual defendants, those claims are now dismissed. *See*

---

[4] Indeed, the Court's docket reflects Taylor's participation in this matter was terminated as of 7/20/2023. Defendants raise this issue out of an abundance of caution and to preserve any issues.

*generally, 111 Debt Acquisition Holdings, LLC v. Six Ventures Ltd.*, 413 F.App'x 824, 831 (6th Cir.2011).

### B. Plaintiffs' claims asserted pursuant to Title VII and R.C. Chapter 4112 in Counts, I through III are limited to issues raised in Plaintiffs' EEOC Charge.

Counts I through III of Plaintiffs' Amended Complaint assert claims under Title VII and R.C. Chapter 4112. (*See* Am. Compl., ECF: #34, PageID: 247-254). Plaintiffs' Amended Complaint attempts to artfully plead around the dispositive issues raised in Defendants' prior MJOP by inserting various vague allegations throughout. (*Id., generally*). But the new allegations do not revive Counts I through III because these issues were not raised in the Charges filed by Plaintiffs.

A Plaintiff cannot bring an employment discrimination claim pursuant to Title VII without first presenting those claims administratively in an EEOC charge.[5] *See v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir.2010). A charge must be "sufficiently precise to identify the parties, and to describe generally the action and practices complained of." *Id*. (quoting 29 C.F.R. § 1601.12(b)). In other words, the "judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Gipson v. Dep't of Rehab. & Corr.*, S.D.Ohio No. 2:18-cv-315, 2020 U.S. Dist. LEXIS 43841, at *19 (Mar. 13, 2020). The relevant inquiry has become known as "the expected scope of investigation" or the ESOI test. *Id*. The "determinative inquiry is whether a plaintiff alleged sufficient facts in his EEOC Complaint to put the EEOC on notice of the claims currently pending before this Court." *Zickefoose v. Austin*, S.D.Ohio No. 2:22-cv-1935, 2023 U.S. Dist. LEXIS 5647, at *14 (Jan. 11, 2023) (cleaned up).

---

[5] Ohio H.B. 352 went into effect on April 15, 2021, extending the same requirement to exhaust administrative remedies. *See generally, McGath v. Steward Trumbull Mem. Hosp., Inc*., N.D.Ohio No. 4:22-cv-2130, 2023 U.S. Dist. LEXIS 106661, at *14 (June 20, 2023), fn. 4. All of Plaintiffs' Charges were filed after the effective date. (*See* Plaintiffs' EEOC Charges, ECF: #34-1 at PageID: #264-282).

Here, Plaintiffs allege they filed their EEOC Charges on or about July 7, 2021. (Am. Compl., ECF: # 34 at PageID: #232, ¶ 25). The Charges themselves, now attached to the Amended Complaint, indicate they were signed by the Plaintiffs between July 21, 2021, and November 6, 2021, so the allegation is clearly inaccurate. (*See* Plaintiffs' EEOC Charges, ECF: #34-1 at PageID: #264-282).

### 1. The scope of the EEOC Charge is limited to McFadden's time supervising Zone 2 from 2016-2017.

Determining the scope of an EEOC Charge begins with analyzing the actual conduct alleged in the EEOC Charge. *Gipson*, 2020 U.S. Dist. LEXIS 43841, at *19. Here, it is notable that although there are eleven party-plaintiffs, each EEOC Charge is *identical*. (*See* Plaintiffs' EEOC Charges, ECF: #34-1 at PageID: #264-282). And each of these identical Charges directs the EEOC to refer to the City's I.A.B. report for details. (*Id*.). And the Charges do not raise any specific issues after the City dismissed the disciplinary charges against McFadden in October, 2018. (*Id*.). Simply put, the EEOC was directed with looking into a specific period by Plaintiffs, and the subsequent matters alleged in the Amended Complaint fall outside the scope of the Charge. S*ee Maeder v. Hollywood Casino*, 97 F. Supp. 3d 941, 946 (S.D.Ohio 2015) ("the Court is not aware of any authority that would obligate the EEOC to seek out and investigate subsequent instances of discrimination during the pendency of its investigation.").

### 2. Under the ESOI Test Plaintiffs' subsequent allegations do not fall within the scope of their EEOC Charges.

Plaintiffs cannot argue that their subsequent complaints fall within the "expected scope of the investigation." To begin, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"

*George v. City of Cincinnati*, S.D.Ohio No. 1:16-cv-688, 2018 U.S. Dist. LEXIS 40167, at *5 (Mar. 9, 2018) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S. Ct. 2061, 153 L. Ed. 2d 106, (2002)). "Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id*.

Since *Morgan*, courts in this District have applied the ESOI test to determine if allegations in the judicial complaint fall within the scope of the EEOC Charge. *Gipson*, 2020 U.S. Dist. LEXIS, at *17. The operative question is whether "plaintiff alleged sufficient facts in his EEOC Complaint to put the EEOC on notice of the claims currently pending before this Court." Here, the answer is plainly no.

As outlined above, Plaintiffs' entire EEOC Charge is premised on McFadden's <u>2016-2017</u> conduct and the City's subsequent investigation culminating in October 2018. (*See* Plaintiffs' EEOC Charges, ECF: #34-1 at PageID: #264-282). The Charge specifically references the I.A.B. report and the City's alleged failure to act on it. (*Id*.). Indeed, the Charges point the EEOC to the I.A.B. investigation itself. (*Id*.). The EEOC was put on notice to investigate McFaden's 2016-2017 conduct and the City's investigation into that conduct. In other words, as it pertains to actions taking place *after* the City's investigation, Plaintiffs did not "put the EEOC on notice of the claims" and thus they are not actionable before this Court. *See Zickefoose*, 2023 U.S. Dist. LEXIS 5647, at *14 (Jan. 11, 2023).

Despite this, the Amended Complaint vaguely references acts in <u>2020-2023</u>. (*See* Am. Compl., ECF: #34 at PageID # 243, ¶¶ 87-88; PageID #245, ¶¶ 97-98; PageID #246, ¶¶ 102-104). These allegations focus on alleged denials of opportunities, assignments, and other unspecified retaliatory acts. (*Id*.).But these actions were not complained of in the EEOC Charge, and no subsequent charges were filed. And thus, being outside the scope of the EEOC Charge are not

11

actionable. S*ee Maeder v. Hollywood Casino*, 97 F. Supp. 3d 941, 946 (S.D.Ohio 2015) ("the Court is not aware of any authority that would obligate the EEOC to seek out and investigate subsequent instances of discrimination during the pendency of its investigation.").

Accordingly, the allegations related to conduct occurring *after* the City's investigation cannot sustain Plaintiffs' Title VII or R.C. 4112 claims and Counts I-III should be dismissed as it pertains to those allegations.

### 3. **Allegations arising after the EEOC issued Right to Sue Letters are not actionable as a matter of law.**

Regardless of the Court's finding under the ESOI test, any allegations related to conduct occurring after the EEOC issued Right to Sue letters must be dismissed. Such conduct, as a matter of law, is outside the scope of the EEOC Charge and thus Plaintiffs have failed to exhaust their administrative remedies on these issues. *See Gipson*, 2020 U.S. Dist. LEXIS, at *17.; *see also*, *Flowers v. Potter*, 2008 U.S. Dist. LEXIS 23980, 2008 WL 697630 at *10-11 (S.D. Ohio 2008) (granting summary judgment on a claim of age discrimination for constructive discharge which occurred after EEOC issued Right to Sue letter); *Schaefer v. U.S. Postal Serv.*, 254 F.Supp.2d 741, 752 (S.D. Ohio 2002) ("Because the alleged retaliation occurred after [plaintiff's] receipt of the Right to Sue Letter, the Court cannot conclude that [p]laintiff's retaliation claim fell within the scope of the agency investigation of his [ ] discrimination claim.").

Here, Plaintiffs' Right to Sue letters were issued on November 15 and 16, 2022. (*See* Right to Sue Letters, ECF: #34-2 at PageID: #283-293). Plaintiffs allege actions occurring after that date in support of their Title VII and R.C. 4112 claims. (*See* Am. Compl., ECF: #34 at PageID: #246, ¶ 103-104). Any claims based on these allegations must be dismissed because Plaintiffs have failed to exhaust their administrative remedies. *See Gipson*, 2020 U.S. Dist. LEXIS, at *17

### C.  The issues raised in Plaintiffs' EEOC Charge are time-barred.

As outlined above, the actionable conduct alleged in Plaintiffs' Amended Complaint giving rise to their Title VII claims occurred exclusively in 2016 and 2017.[6] (Am. Compl., ECF: #34 at PageID #232, ¶ 30-51; *see also*, Plaintiffs' EEOC Charges, ECF: #34-1 at PageID: #264-282) (describing McFadden's alleged misconduct from 2016-2017 and the subsequent I.A.B. investigation). But these claims are time-barred.

### 1.  Plaintiffs' Title VII claims are time-barred because they waited nearly three years to file an EEOC Charge.

It is well established that in Ohio "a person claiming discrimination in violation of Title VII must file a charge with the EEOC within 300 days of the alleged discriminatory practice, 'or any claims arising from that act will be dismissed as untimely.'" *George v. City of Cincinnati*, S.D.Ohio No. 1:16-cv-688, 2018 U.S. Dist. LEXIS 40167, at *5 (Mar. 9, 2018) (quoting *Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 374 (6th Cir. 2002)).

Without question, Plaintiffs' Title VII claims stem from when McFadden was their supervisor as the lieutenant assigned to Patrol Zone 2 and the City's investigation which followed. (Am. Compl., ECF: #34 at PageID #232, ¶ 30-60; *see also*, Plaintiffs' EEOC Charges, ECF: #34-1 at PageID: #264-282).) (describing McFadden's alleged misconduct from 2016-2017). In early 2017, Plaintiffs "submitted letters and complained of the pervasive, hostile work environment, to include the incidents and issues" related to McFadden's 2016-2017 tenure in Zone 2. (*Id.*).

But McFadden was relieved from her assignment (and supervision of these Plaintiffs) on March 10, 2017. (Relief of Assignment, ECF: #34-3 at PageID: #401-402). And the disciplinary

---

[6] Three Plaintiffs claim McFadden privately published a book, calling them racists. (*See* Compl., ECF: #1 at PageID: #15, ¶ 70). There is no allegation that this standalone point is related to any claims. Further, even if it were, and even if McFadden's publishing of a book as a private citizen could be the basis of a Title VII claim, it would still be untimely.

charges against McFadden stemming from the I.A.B. investigation were adjudicated in her favor on October 9, 2018. (*See* Director's Finding, ECF: #34-5 at PageID: #404-406). Even if the Court generously uses the October 9, 2018, date to calculate the EEOC deadline, Plaintiffs had until August 5, 2019, to timely file their charges. Instead, Plaintiffs waited another 1002 days after the decision on McFadden's discipline to file their Charges. (*See* Plaintiffs' EEOC Charges, ECF: #34-1 at PageID: #264-282). As such, the Title II claims plead in Counts I through III are time-barred and should be dismissed. *George*, 2018 U.S. Dist. LEXIS 40167, at *5 (Mar. 9, 2018).

## 2. Plaintiffs cannot claim equitable tolling of the 300-day bar.

To the extent Plaintiffs allege the time limit to file a Charge was equitably tolled, that argument fails. While the Sixth Circuit has held equitable tolling can apply to the 300-day bar, courts should apply the doctrine sparingly. *Thomas v. Columbus City Schools*, S.D.Ohio No. 2:21-cv-1117, 2021 U.S. Dist. LEXIS 191629, at *8 (Oct. 5, 2021) (citing *Williams v. Nw. Airlines*, 53 F. App'x 350, 351 (6th Cir. 2002)). It is Plaintiffs' duty to demonstrate facts showing they have been diligently pursuing their claims. *Id.*

Nothing in the Complaint can reasonably be read to demonstrate such facts. Plaintiffs allege that an internal investigation occurred, related to their allegations, and concluded on February 9, 2018. (*See* Director's Finding, ECF: #34-5 at PageID: #404-406). But any reliance on this internal investigation for equitable tolling fails on the law and facts.

First, attempting to resolve disputes internally for over two years is not sufficient to demonstrate the "diligent pursuit of claims" necessary for a court to grant an equitable tolling of the 300-day bar. *See e.g.*, *Thomas v. Columbus City Schools*, S.D.Ohio No. 2:21-cv-1117, 2021 U.S. Dist. LEXIS 191629, at *11 (Oct. 5, 2021) (dismissing an ADA claim because of the untimely filing

of an EEOC charge where the plaintiff claimed they were pursuing internal remedies over a two-year period).

As outlined above, even assuming the 300-day bar was tolled until the investigation was completed, *and* McFadden's own discipline was adjudicated on October 9, 2018, this puts the charge filing deadline at or around August 5, 2019. Again, Plaintiffs missed this date by more than 1000 days. (*See* Plaintiffs' EEOC Charges, ECF: #34-1 at PageID: #264-282)

### D. Plaintiffs' Counts I through Count III do not plead any plausible claims under either Title VII or R.C. 4112, *et seq.*

Counts I through III allege claims arising under both Title VII and R.C. 4112, *et seq.* (*See* Am. Compl., ECF: #34, PageID: #247-254). Claims brought under R.C. 4112 are substantively analyzed the same as those brought under Title VII. *Grubach v. Univ. of Akron*, 10th Dist. Franklin No. 19AP-283, 2020-Ohio-3467, ¶ 48. Accordingly, to the extent Plaintiffs' Title VII claims fail, so do their claims under R.C. 4112, *et seq. Id.*

Although plaintiffs pursuing Title VII claims do not need to plead the prima facie case, they "must allege sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference" that the named defendants discriminated against them. *Roper v. City of Cincinnati Fire Dept.*, S.D.Ohio No. 1:18-cv-901, 2019 U.S. Dist. LEXIS 158459, at *7 (July 12, 2019). The substantive analysis of discrimination claims under Ohio Revised Code Chapter 4112 et seq., merge with that of Title VII claims. *See Singleton v. PSA Airlines, Inc.*, S.D.Ohio No. 3:19-cv-161, 2021 U.S. Dist. LEXIS 61622, at *10 (Mar. 31, 2021). Thus, to the extent any of the arguments in this section are well taken, it disposes of Plaintiffs corresponding state law claims. *Id.*

Here, none of the eleven Plaintiffs make allegations sufficient to meet this standard.

15

1. **Count I must be dismissed as Plaintiffs do not allege any viable hostile work environment claims because the alleged conduct was neither severe nor pervasive.**

Count I alleges a hostile work environment in violation of Title VII and R.C. 4112, *et seq*. (Am. Compl., ECF: #34, PageID: #247-250). A hostile work environment is created "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive —is beyond Title VII's purview." *Fisher v. Fuyao Glass Am., Inc.*, S.D.Ohio No. 3:18-cv-405, 2020 U.S. Dist. LEXIS 1596, at *6 (Jan. 3, 2020) (quoting *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

"When the factual allegations in the Complaint are insufficient to state a plausible claim for relief, courts have not hesitated to dismiss hostile work environment claims under Fed. R. Civ. P. 12(b)(6) or 12(c)." S*ee Fisher v. Fuyao Glass Am., Inc*., S.D.Ohio No. 3:18-cv-405, 2020 U.S. Dist. LEXIS 1596, at *8 (Jan. 3, 2020); *See also, Woodson v. Holiday Inn Express,* No. 18-1468, 2018 U.S. App. LEXIS 28272, 2018 WL 5008719 (6th Cir. Oct. 4, 2018) (affirming judgment on the pleadings where plaintiff alleged only two instances of racially harassing conduct); *Carlisle v. Staffing Solutions Southeast, Inc*., No. 1:16-CV-334, 2017 U.S. Dist. LEXIS 79353, 2017 WL 2274995 (E.D. Tenn. May 24, 2017) (granting judgment on the pleadings where plaintiff alleged only two incidents of racially discriminatory comments).

Here, three of the eleven Plaintiffs allege isolated incidents/comments by McFadden to establish their hostile work environment claims. To be sure, no Plaintiffs allege that Defendants Ginther, Clark, Pettus, Sarff, Bourke, nor McHenry, made *any* comments or otherwise took actions

to create a hostile environment, outside bald allegations that they allowed McFadden's comments. And the cited allegations of a hostile work environment are insufficient to plead a claim against the City of Columbus based on McFadden's conduct.

Indeed, only three Plaintiffs allege any *specific* conduct. Plaintiff Tate alleges a single instance, where McFadden advised him that he would receive a more favorable review because she did not believe in "black on black" crime. (Am. Compl., ECF: #34 at PageID: #233, ¶ 37). Plaintiff Morefield alleges two instances. First, where McFadden told him that "his white friends" were unhappy with him because he married a white woman and warned him that those friends still just saw him as a "dumb nig*a" and would treat him as such. (*Id*. at PageID: # 233, ¶ 37). He also alleges that McFadden made comments admonishing black officers by stating that they were being a "white type" and describing people in interracial marriages as "white woman lover(s)". (*Id*. at PageID: #234, ¶ 39). Plaintiff Johnson alleges meetings where McFadden would tell him that "(black) officers have to stick together" and that "(white) officers on 13 precinct aren't your brothers." (*Id*. at PageID: # 234, ¶¶ 43-44). These isolated incidents do not support a hostile work environment claim. S*ee Fisher v. Fuyao Glass Am., Inc*., S.D.Ohio No. 3:18-cv-405, 2020 U.S. Dist. LEXIS 1596, at *8 (Jan. 3, 2020).

Attempting to artfully plead around judgment, Plaintiffs' Amended Complaint includes new, vague allegations that McFadden created a hostile environment. (*See* Am. Compl., ECF: #34 at PageID: #34, ¶¶ 42; 52-56). As a matter of law, such bald allegations do not plausibly state a claim for a hostile work environment and "courts have not hesitated to dismiss [such] hostile work environment claims." Fisher, 2020 U.S. Dist. LEXIS 1596, at *6. As such, all hostile work environment claims contained in Count I should be dismissed.

17

**2.** **Counts II and III must be dismissed because Plaintiffs do not allege adverse employment actions sufficient to support discrimination or retaliation claims.**

Count II alleges racial discrimination under Title VII and R.C. 4112. (Am. Compl., ECF: # 34, PageID: #250-254). Count III alleges retaliation in violation of the same statutes. (*Id*. at PageID: #252-254). A discrimination claim under Title VII requires an adverse employment action. *Stewart v. Esper*, 815 F.App'x 8, 16 (6th Cir.2020). So does a retaliation claim. *Id*. "An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Freeman v. Potter*, 200 F.App'x 439, 442 (6th Cir.2006). Such action usually "inflicts direct economic harm." *Id*. at 762. An employment action must amount to "a materially adverse change" in the terms or conditions of employment to be actionable. The action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities."

Not all Plaintiffs even allege they suffered adverse employment actions. And those that do, allege unactionable items:

### i. Plaintiff Tate only alleges a more favorable review and his own decisions not to take certain postings:

Plaintiff Tate alleges he received a *more favorable* review because of his race. (Am. Compl., ECF: # 34 at PageID: #233, ¶ 35). Even a *negative* review is only actionable under limited circumstances, where it is used in a subsequent decision to alter the terms of employment. *Reeves v. Case W. Res. Univ*., No. 1:07-CV-1860, 2009 U.S. Dist. LEXIS 90308, at *51-53 (N.D. Ohio Sep. 30, 2009). It follows that the more favorable review cited here is unactionable. Next, Tate alleges he was "forced to decline a highly desirable position" because he did not want to work for McFadden. (Am. Comp., ECF: #34 at PageID: #243, ¶ 87). By definition, an adverse employment requires a "change in the terms or conditions of . . . employment because of [the] *employer's conduct*." *Plautz*

*v. Potter*, 156 F.App'x 812, 817 (6th Cir.2005) (internal quotation omitted) (emphasis added) (ellipsis original). As a threshold concept, Tate's decision not to apply for this position is not an adverse employment action.

### ii. Plaintiff Morefiled alleges a voluntary transfer, his own decision not to interview for certain postings, and an investigation:

Plaintiff Morefield voluntarily transferred out of Zone 2 as a result of McFadden's conduct. (Am. Compl., ECF: #34, at PageID: #233, ¶ 40). A voluntary transfer is not an adverse employment action unless the new position is so "objectively intolerable to a reasonable person" that is constitutes a constructive discharge. *Vaughn v. Dawn Food Prods*., E.D.Mich. No. 2:18-CV-11491-TGB, 2020 U.S. Dist. LEXIS 154114, at *18 (Aug. 25, 2020). Next, he alleges he was "denied any meaningful opportunity to interview" for positions in the Recruiting Unit. (Am. Compl., ECF #34, at PageID # 243, ¶ 88). Without identifying actionable employer conduct motivated by racial animus, this allegation cannot sustain a Title VII claim. *See Plautz*, 156 F.App'x 812, 817 (6th Cir.2005).

Finally, Morefield alleges that he was the target of an unfair *investigation* in late 2022. (*Id*. at PageID: #246, ¶¶ 103-104). But an investigation – even one which places a party on administrative leave – without subsequent action does not constitute an adverse employment action. *See Dendinger v. Ohio*, 207 F.App'x 521, 527 (6th Cir.2006).

### iii. Plaintiff Johnson alleges only his own decision not to interview for certain postings.

Plaintiff Johnson alleges he was "denied any meaningful opportunity to interview" for positions in the Recruiting Unit. (Am. Compl., ECF #34, at PageID # 243, ¶ 88). The exact same allegation levied by Morefiled above, and fails to allege actionable employer conduct, motivated by any racial animus, and is thus not actionable.

19

### iv. Plaintiff A. Kasza only alleges the non-selection of an unpaid assignment and investigation not resulting in discipline.

Plaintiff A. Kasza alleges she was not selected to sit on a new officer selection board. (Am. Compl., *ECF: #34,* at PageID: #236, ¶ 51). The non-selection for unpaid special assignments or training opportunities does not constitute an adverse employment action. *See Gorbe v. City of Lathrup Village*, E.D.Mich. No. 17-11782, 2021 U.S. Dist. LEXIS 76566, at *3 (Apr. 21, 2021) (citing *Lindsey v. Whirlpool Corp*., 295 F. App'x 758, 768 (6th Cir. 2008)). A. Kasza also alleges she was investigated and "threatened" with discipline. (Am. Compl., *ECF: #34,* at PageID: #241, ¶ 76). But threats of discipline do not amount to an adverse employment action. *Plautz v. Potter,* 156 F. App'x 812, 817 (6th Cir. 2005) ("it is settled in this circuit that a threat to discharge is not an adverse employment action.").

### v. Plaintiff Hurst only alleges his decision to pass on certain positions.

Plaintiff Hurst alleges he was "forced to ***pass*** on desirable positions" because he did not want to work under McFadden. (Am. Compl., at PageID#245, ¶¶ 97-98). As mentioned above, a voluntary choice not to take an assignment, does not amount to employer conduct, and thus is not an adverse action for Title VII purposes. *Plautz v. Potter*, 156 F.App'x 812, 817 (6th Cir.2005). Accordingly, Hurst's claims brought under Count II and III should be dismissed.

As outlined above, the adverse actions alleged by the three Plaintiffs are insufficient as a matter of law to support discrimination or retaliation claims. The remaining Plaintiffs fail to plead any adverse specific adverse employment actions. As such, the discrimination and retaliation claims alleged in Counts II and III should be dismissed.

**3. Count V must be dismissed because Plaintiffs fail to plead any viable claim under R.C. § 4112.02(J).**

Count V alleges that the individually named Defendants aided and abetted unlawful discrimination in violation of R.C. § 4112.02(J). (Am. Compl., ECF: #34, at PageID: # 257-256). Under Ohio law, an individual is an aider and abetter if he "knowingly does something which he ought not to do ... which assists or tends in some way to affect thBoe doing of the thing which the law forbids." *Luke v. City of Cleveland*, 2005 U.S. Dist. LEXIS 49630, 2005 WL 2245187 at * 8 (N.D. Ohio Aug. 22, 2005) (*citing State v. Stepp*, 117 Ohio App. 3d 561, 568, 690 N.E.2d 1342 (Ohio Ct. App. 1997) (interpreting § 4112.02(J)).

As a threshold issue, Plaintiffs' EEOC Charge only identifies two of these Defendants, Pettus and Bourke. (*See* Plaintiffs' EEOC Charges, ECF: #34-1 at PageID: #264-282). Generally, a person not identified in the EEOC Charge may not be sued on allegations stemming from the Charge. *See Penn v. Rockwell Internat'l. Corp*., S.D.Ohio Case Nos. C-2-86-992, C-2-87-98, 1988 U.S. Dist. LEXIS 15409, at *9 (Oct. 18, 1988). None of the recognized exceptions apply here. As such, this claim must be dismissed as it pertains to Ginther, Clark, Sarff, and McHenry.[7]

Next, Plaintiffs vaguely allege these Defendants failed in executing certain policies and adequately disciplining McFadden. (*See generally,* Am. Compl., ECF: # 34). No allegations meet the requirements of establishing that any of the Defendants "knowingly" assisted in a violation of the law. Again—if anything, refraining from further discipline against McFadden stopped violations of the law, as a jury found in her lawsuit. *See Melissa McFadden v. City of Columbus*, Case No. 2:18-cv-00544. As such, the claims under R.C. § 4112.02(J) should be dismissed.

---

[7] This administrative requirement now applies to R.C. 4112 claims by way of the passage of Ohio H.B. 352. (*See infra*, at fn. 5).

21

**E. Plaintiffs' claims asserted pursuant to §§ 1983; 1985; and 1986 in Counts IV, VI, and VII respectively are barred as a matter of law.**

Count IV alleges Equal Protection violations under § 1983 related to Plaintiffs' public employment. (Am. Compl., ECF: #34 at PageID: #254-257). Additionally, Counts VI and VII allege conspiracy to violate their civil rights under § 1985(1) and neglect to prevent the violation of their rights under § 1986, respectively. (*Id*. at PageID: # 258-261). All the constitutional claims fail on threshold issues.

In a § 1983 discrimination case, the plaintiff must prove that "the employer made an adverse employment decision with a discriminatory intent and purpose. *Yerkes v. Ohio State Hwy. Patrol*, 6th Cir. No. 22-3030, 2022 U.S. App. LEXIS 35260, at *12 (Dec. 19, 2022). Substantively, courts analyze § 1983 public employment claims in a similar manner as Title VII discrimination claims. *See, e.g., Weberg v. Franks*, 229 F. 3d 514, 522 (6th Cir. 2000). To the extent the Court reaches the substance of these claims, they fail for the same reasons Plaintiff's Title VII claims do. (*See infra*, at Section VI(C)). However, as outlined below, the Court need not reach the substance of these claims.

**1. Plaintiffs' constitutional claims as plead in Counts IV, VI, and VII are time-barred.**

Plaintiffs' § 1983 claims are governed by a two-year statute of limitations. *Fulmer v. Myers*, S.D.Ohio No. 2:16-CV-79, 2016 U.S. Dist. LEXIS 105605, at *9 (Aug. 10, 2016) (Noting that while "42 U.S.C. § 1983 does not impose a particular limitations period, the Court applies the 'general' or 'residual' state statute of limitations applicable to tort and personal injury claims, which in Ohio is two years). Conspiracy claims plead under Sections 1983; 1985; and 1986 have the same two-year statute of limitations and begin accruing from the "last discreet act" described in the conspiracy. *Easterly v. Budd*, N.D.Ohio No. 4:06 CV 00186, 2006 U.S. Dist. LEXIS 58170, at *50 (Aug. 16, 2006)

Here, the claims are time-barred. Plaintiffs' first complaint was filed on February 1, 2023. (*See* Compl., ECF: #1). As a threshold issue, any conduct alleged prior to February 1, 2021 is time-barred. And even in the Amended Complaint, the § 1983 claim is predicated on McFadden's alleged treatment of Plaintiffs when she was their patrol lieutenant—actions all alleged to have occurred in **2016-2017**. (*See* Compl., ECF #34 at PageID: #238, 30-51). The City's investigation and decision on discipline related to this conduct were completed by October 9, 2018. (Id. at PageID: #238, ¶ 61). These claims are time-barred on their face.

Plaintiffs allege that an internal investigation into McFadden's conduct took place beginning in 2017 and concluded on February 9, 2018. (Am. Compl., ECF: #34 at PageID: #238, ¶ 61). The decision not to discipline McFadden was made on October 9, 2018. (*See* Director's Finding, ECF: #34-5 at PageID: #404-406). Thus, to be timely, any suit on these claims must have been filed by October 9, 2020. As the Plaintiffs were more than two years late, the claims are plainly time-barred. As such, the claims are time-barred and must be dismissed. *See Fulmer*, 2016 U.S. Dist. LEXIS 105605, at *9. As such, the constitutional claims alleged in Counts IV, VI and VII should be dismissed.

### 2. Even if the Court considers the untimely causes of action, Count VI must be dismissed because Plaintiffs' do not allege Defendants personally participated in any deprivation.

To succeed on the individual capacity § 1983 claims, plaintiffs "must demonstrate personal involvement of each Defendant in causing [their] injury." *Kessling v. Ohio State Univ.*, S.D.Ohio No. 2:20-cv-1719, 2022 U.S. Dist. LEXIS 211191, at *47-48 (Nov. 21, 2022). In the supervisory context, a plaintiff must demonstrate that a supervisory defendant "did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on." *Id*. To be clear, "supervisory

liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir.1999).

Even when read most generously, a detailed review of the Complaint shows that the only allegations against these Defendants are <u>failures to act</u>—not that any of them personally participated in *any* deprivation. The Complaint is devoid of any allegation that Mayor Ginther discriminated against, retaliated against, or harassed these Plaintiffs. Instead, it alleges he failed to act, including that he failed to discipline McFadden (ECF: 34 at PageID: #238, ¶ 66); he failed to stop McFadden from public disparagement, attacks, and retaliation against Plaintiffs (*Id*. at PageID: #241, ¶ 73); he failed to protect Plaintiffs against retaliation or address McFadden's alleged policy violations (*Id*. at PageID #242, ¶ 79); failed to investigate policy violations (*Id*. at ¶ 78); and failed to take action to stop McFadden's conduct. (*Id*. at PageID #251, ¶ 129). None of these allegations are actionable under § 1983. *See Bass*, 167 F.3d 1041, 1048.

The allegations against Safety Director Clark; Departmental Human Resources Officer Sarff; Deputy Director Bourke; and Former Deputy Director McHenry mirror those against Mayor Ginther, without individualized distinction. (Am. Compl., ECF: # 34 at ¶¶ 66; 73; 78-79; 129). There are no allegations that these Defendants discriminated against, retaliated against, or harassed these Plaintiffs. Thus, the § 1983 claims must be dismissed. *See Bass*, 167 F.3d 1041, 1048.

In addition to the same allegations outlined above, Plaintiffs allege Former Director Pettus failed to discipline McFadden—a failure to act. (Am. Compl., ECF: #34, PageID: 239 at ¶¶ 67-72). But again, Plaintiffs do not allege that Former Director Pettus discriminated against, retaliated against, or harassed Plaintiffs with any particularity. *See Bass*, 167 F.3d 1041, 1048. In short, these alleged *failures to act* are not actionable under § 1983, therefore Count IV must be dismissed. *Kessling,* 2022 U.S. Dist. LEXIS 211191, at *47-48; *Bass*, 167 F.3d 1041, 1048.

Further, any conspiracy or neglect claim predicated on § 1983 liability must be predicated on a constitutional violation. *See Bazzi v. City of Dearborn*, 658 F3d 598, 602 (6th Cir. 2011). Because Plaintiffs do not allege any cognizable constitutional violations to underpin the conspiracy or neglect claims, Counts VI and VII must also be dismissed *Id*.

### 3. Even if the Court finds a cognizable constitutional violation, the individual Defendants are entitled to qualified immunity.

Individual Defendants may only be held liable in damages for those actions which (1) violated a plaintiff's statutory or constitutional rights <u>and</u> (2) were *clearly established* rights at the time of the alleged violation. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As outlined above, there is no violation here. But even assuming arguendo there was one, Plaintiffs cannot meet the second prong, that any right was clearly established.

Actions are clearly established as a violation of law only if it was "sufficiently clear that **every reasonable official** would understand that what [the government official] is doing is unlawful." *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018) (emphasis added). Put differently, "existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kiidd*, 563 U.S. 731, 741 (2011)). And the Supreme Court recently reinforced this high bar in back-to-back opinions, reversing Ninth and Tenth Circuit decisions denying qualified immunity. *See City of Tahlequah, Oklahoma, et al. v. Austin P. Bond, as Special Adminstrator of the Estate of Dominic F. Rollice, deceased*, 595 U.S. ___ (2021), 2021 U.S. LEXIS 5310; *Daniel Rivas-Villegas v. Ramon Cortesluna*, 595 U.S. __ (2021), 2021 U.S. LEXIS 5311.

Here, Plaintiffs cannot point to any caselaw that would place these Defendants on notice—*beyond debate*—that failing to discipline McFadden would violate their constitutional rights. If anything, the case law proved the exact opposite—finding that disciplining McFadden violated §

1983. *See Melissa McFadden v. City of Columbus*, Case No. 2:18-cv-00544. As such, the individual

Defendants are immune from the claims alleged in Counts VI, VI, and VII of Plaintiffs' Complaint.

### 4. **Plaintiffs fail to allege any viable *Monell* claim against the City of Columbus.**

As it pertains to the § 1983 claims against the City of Columbus, it is well settled that a

municipality may not be held liable under a respondeat superior theory. *Biver v. Saginaw Tp.*

*Community Schools*, 878 F.2d 1436, 1439 (6th Cir.1989). Instead, "it is when execution of a

government's policy or custom . . . inflicts the injury that the government as an entity is responsible

under § 1983" *Id*. (quoting *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56

L.Ed.2d 611 (1978)).

Here, Plaintiffs allege the opposite—that City officials refused to follow policy or address

McFadden's alleged policy violations. (Am. Compl., ECF: # 34 at PageID: #236, ¶¶ 53; 73; 75; 78).

And that is insufficient to state a claim under *Monell*. *See Biver*, 878 F.2d 1436, 1439. Therefore,

Count VI against the City must be dismissed. Finally, Counts VI and VII do not apply to the City

because the municipal entity cannot conspire or neglect. *See e.g., Fisher v. Cincinnati*, 753 F.Supp.

681, 691 (S.D.Ohio 1990). To the extent those Counts are alleged against the City of Columbus, they

must be dismissed.

### V. CONCLUSION

For the foregoing reasons, Defendants are entitled to judgment as a matter of law, and thus,

should be granted judgment on the pleadings.

Respectfully submitted,

/s/ *Melvin J. Davis*
Melvin J. Davis (0079224)
Thomas N. Spyker (0098075
Reminger Co., L.P.A.
200 Civic Center Drive, Suite 800

26

Columbus, Ohio 43215
(614) 228-1311; FAX (614) 232-2410
e-mail: mdavis@reminger.com
          tspyker@reminger.com
*Attorney for Defendants City of Columbus,*
*Andrew Ginther, Robert Clark, Ned Pettus,*
*Douglas Sarff, Kathleen Bourke and*
*Courtney McHenry*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and accurate copy of the foregoing was sent via

the Court's e-filing system this 12th day of September 2023, to all counsel of record:

Zachary Gottesman, Esq.
404 East 12th Street
Cincinnati, Ohio 45202
zg@zgottesmanlaw.com

Christopher Wiest, Esq.
25 Town Center Blvd., Suite 104
Crestview Hills, KY 41017
chris@cwiestlaw.com

Robert J. Thumann, Esq.
404 E. 12th Street, 2nd Floor
Cincinnati, Ohio 45202
thumann@ctlawcincinnati.com

Yazan S. Ashrawi, Esq.
Kaitlin L. Madigan, Esq.
FROST BROWN TODD LLP
10 W. Broad Street, Suite 2300
Columbus, Ohio 43215
yashrawi@fbtlaw.com
kmadigan@fbtlaw.com
*Counsel for Defendant Melissa McFadden*

27

Thomas B. Bruns, Esq.
4750 Ashwood Drive, Suite 200
Cincinnati, Ohio 45241
tbruns@bcvalaw.com

Robb S. Stokar, Esq.
404 East 12th Street, 1st Floor
Cincinnati, Ohio 45202
rss@stokarlaw.com
*Attorneys for Plaintiffs*

/s/ Melvin J. Davis
Melvin J. Davis (0079224)
Thomas N. Spyker (0098075)