**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANDRE TATE, *et al.,* | : | |
| | : | Case No. 2:23-cv-00492 |
| Plaintiffs, | : | |
| | : | Judge Michael H. Watson |
| v. | : | |
| | : | Magistrate Judge Elizabeth Preston Deavers |
| CITY OF COLUMBUS, *et al.,* | : | |
| | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT MELISSA MCFADDEN'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Now comes Defendant Melissa McFadden ("McFadden"), by and through counsel, and respectively requests an order of dismissal of the claims against her in Plaintiffs' First Amended Complaint pursuant to Fed. R. Civ. P. 12(c), 8(a) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). The pleadings have closed, and Plaintiffs' First Amended Complaint has failed to state a claim upon which relief may be granted as to Defendant McFadden. A Memorandum in Support is attached.

                                                          Respectfully submitted,

                                                          */s/ Kaitlin L. Madigan*
                                                          Yazan S. Ashrawi (0089565)
                                                          Kaitlin L. Madigan (0087891)
                                                          FROST BROWN TODD LLP
                                                          10 W. Broad Street, Suite 2300
                                                          Columbus, OH 43215
                                                          614-464-1211 / 614-464-1737 (Fax)
                                                          yashrawi@fbtlaw.com
                                                          kmadigan@fbtlaw.com

                                                          *Attorneys for Defendant Melissa McFadden*

**MEMORANDUM IN SUPPORT**

**I.     INTRODUCTION**

Defendant McFadden files this Motion for Judgment on the Pleadings, independent of the Motion of Defendants Andrew Ginther, Robert Clark, Ned Pettus, Douglas Sarff, Kathleen Bourke, Courtney McHenry and the City of Columbus ("the City Defendants"), addressing the allegations in the First Amended Complaint ("FAC") referring specifically to her. Counts I, II and III in the First Amended Complaint of the City Defendants do not include McFadden; only Counts IV, V, VI, and VII include her as a Defendant.

While McFadden addresses these claims independently of the City Defendants, many of the City Defendants' arguments also apply to her and to that extent, McFadden incorporates the City Defendants' Motion for Judgment on the Pleadings herein. Specifically, the City Defendants' Motion rightly asserts that the FAC references acts by McFadden when she was Plaintiffs' supervisor between 2016 and 2017. Any claims based on this conduct would be time-barred.

Plaintiff's FAC attempts to correct the untimely claims in the original Complaint with generalized references to conduct "continuing into 2021 and 2022." Yet the factual allegations of Plaintiffs' own FAC evade this artful pleading. McFadden supervised the Plaintiffs between 2016 and 2017. The investigation into her conduct was terminated in 2018. Plaintiffs' claims against McFadden are barred as a matter of law.

**II.    FACTUAL ALLEGATIONS**

Defendant McFadden fully incorporates the factual statement by the City Defendants in their Motion for Judgment on the Pleadings but highlights the below allegations in Plaintiffs'

2

FAC. These below allegations apply specifically to her alleged conduct toward Plaintiffs and are provided in chronological order.

### A. FAC Allegations Regarding McFadden From 2015 And 2016

Plaintiffs allege that in March 2016, McFadden was assigned as the patrol lieutenant of Zone 2 "a geographical area of the city patrolled by the Division of Police." *See* Plaintiffs' First Amended Complaint, ECF #34 at ¶29. While McFadden's Answer corrected the date to 2014, for the purposes of this Motion, the 2016 date will be used. *See* Defendant McFadden's Answer to Plaintiffs' First Amended Complaint, ECF #38 at ¶29.

Plaintiff Morefield alleges that in "2015[1] and 2016 [McFadden] counseled [him] . . . to file unmerited and frivolous EEO related complaints." *See* ECF #34, ¶57. Plaintiff Morefield alleges in "late 2016" McFadden "advised [him] that his friends . . . were unhappy because [he] was sleeping with, and had married, a white woman" and made other racially toned comments. *Id.* at ¶¶37-39. Morefield alleges he *left Zone 2 and McFadden's supervision* in 2016. *Id.* at ¶40.

Plaintiff Johnson claims in 2016 he "was required to meet with Defendant McFadden at her request several times" and to provide her with his cell phone number. *Id.* at ¶ 43. Plaintiff Johnson alleges that at those meetings with McFadden she made several race-based comments and "discouraged officer proactivity." *Id.* at ¶¶44-45.

Plaintiff Amanda Kasza alleges that on or about April 28, 2017, after McFadden had been reassigned and no longer supervised her, McFadden "denied [her] and another white officer, on the basis of their race, the opportunity for service on a new officer selection board." *Id.* at ¶51.

---

[1] Plaintiff Morefield's allegation here regarding conduct in "2015 and 2016" contradicts paragraph 29 of the First Amended Complaint claiming McFadden was not assigned as patrol lieutenant to Zone 2 until 2016. *See also* First Amended Complaint at ¶59.

B.	FAC Allegations Regarding McFadden From 2017

Plaintiff Tate alleges that on or about January 25, 2017, McFadden met with him regarding his performance evaluation and that he would receive a "*more favorable* evaluation by Defendant McFadden because he is an African American." *Id.* at ¶¶32-36 (emphasis added).

On or about January 29, 2017, Commander Rhonda Grizzell ("Grizzell") was assigned to Zone 2. *Id.* at Exhibit B, PageID #307. Grizzell requested an I.A.B. investigation of McFadden on March 7, 2017. *Id.* at PageID #381-3860. On March 12, 2017, Grizzell relieved McFadden from her position as the Zone 2 patrol lieutenant and reassigned her to the property room. *Id.* at PageID #399-400. It is *undisputed* in the FAC that by April 2017, McFadden was no longer supervising Plaintiffs.

Plaintiff Johnson and Plaintiff Morefield both allege that on or about March 6, 2017, they reported they had been victims "of a hostile work environment based on race and [were] subjected to racially discriminatory comments from Defendant McFadden." *Id.* at ¶¶36, 41. The FAC does not state when the comments occurred, only when they were reported.

Plaintiff Jeff Kasza alleges that in on or about June 2017, *after* the initiation of the I.A.B. investigation, he reported he "had been a victim of a hostile work environment based on race, and subjected to racially discriminatory comments and actions from Defendant McFadden." *Id.* ¶46. The FAC does not state when the comments or conduct occurred, only when they were reported.

Plaintiffs also make general allegations about McFadden's conduct in 2017 that was not directed towards a specific Plaintiff. These allegations include: (1) "discourage[ing] proactive police activity" based on a belief that "arrests were racially motivated and disproportionally impacted minorities"; (2) "suggest[ing] to black officers they find and date only black females";

4

(3) "argu[ing] with a community member at a public meeting"; (4) "target[ing] for inquiry or berat[ing] officers making arrests or having use of force incidents." *Id.* at ¶¶46-50.

### C. FAC Allegations Regarding McFadden From 2018

Between 2018 and 2020 Plaintiffs' FAC makes *no* allegations regarding specific conduct by McFadden. The FAC does provide insight into the I.A.B. investigation initiated by Grizzell in March 2017, and concluded in 2018.

The I.A.B. investigation concluded February 9, 2018, with a recommendation sustaining three charges against McFadden. *Id.* at ¶61. Then Police Chief Kimberly Jacobs sustained the three charges and recommended that McFadden be suspended, demoted, and terminated. *Id.* at ¶65.

On June 4, 2018, McFadden initiated a lawsuit against the City over her reassignment and the disciplinary investigation. *See generally, Melissa McFadden v. City of Columbus*, Case No. 2:18-cv-00544, filed June 4, 2018. (Hon. J. Sargus, presiding). This Court may take judicial notice of McFadden's lawsuit as a public record. *Barany-Snyder v. Weiner*, 539 F.3d 327 (6th Cir. 2008).

On October 9, 2018[2], Defendant Pettus dismissed the three disciplinary charges where the Division of Police had not met its burden of proof. *See* FAC, ECF #34 at ¶67¶-69. McFadden was restored to her position without further discipline. *Id.* Plaintiffs Morefield, Johnson, Tate and Tobin were transferred into other assignments, at their own request. *Id.* at ¶72. It is *undisputed* by the FAC that the I.A.B. investigation was concluded in 2018. It is also *undisputed* by the FAC

---

[2] Defendant McFadden alleges, and pleads in her Answer, that the charges were dismissed as of August 2018. However, for the purpose of the Motion of Judgment on the Pleadings. McFadden will use the October 2018 date.

5

that as of 2018, Plaintiffs Morefield, Johnson, Tate and Tobin were no longer under McFadden's supervision.

### D. FAC Allegations Regarding McFadden After 2018

Plaintiffs' allegations regarding McFadden between 2018 and 2021 are unrelated to any past role she held as their supervisor. Plaintiffs' primary allegation is that in September 2020, McFadden "authored a book that publicly disparaged and attacked the Division of Police, and specifically Plaintiffs Miller, Mason, and others as racists." *Id.* at ¶74. Plaintiffs allege that the book was written "in retaliation for having reported her prior violations." *Id.* Plaintiffs allege that the book "became widely known within the police department . . . and also created an ongoing, hostile work environment." *Id.* Plaintiffs make no specific allegations regarding McFadden other than authoring the book. *Id.* Plaintiffs do not cite the contents of the book they allege are "publicly disparag[ing]."

Plaintiffs make a similar allegation that "[a]fter September 10, 2020 and throughout 2021 Defendant McFadden was routinely permitted to violate Division policy when she continued to publicly disparage and attack the Division of Police, and specifically Plaintiffs Miller and Mason and others as racists." *Id.* at ¶75. Plaintiffs do not make any allegations regarding specific comments including their content, time or context. Plaintiffs do not make any allegations that McFadden engaged in any discriminatory acts towards them from 2020 to 2021.

In 2021, Plaintiffs' allegations regarding McFadden are confined only to allegations of her filing of internal or EEO complaints against them. *Id.* at ¶¶91, 94, 99. There are no allegations in the FAC regarding specific conduct by McFadden after 2021.

### E. FAC Allegations Regarding McFadden And Plaintiffs' EEOC Charges

Plaintiffs allege they filed their EEOC Charges on or about July 7, 2021. *Id.* at ¶25. The Charges, attached to the FAC, are nearly identical and identify *no conduct by McFadden after 2017.* See FAC, ECF #34, Exhibit A-2, generally. The Charges rely entirely on the I.A.B. investigation regarding McFadden and the reinstatement of her position following the investigation. *Id.* On November 15 and 16, 2022, the EEOC issued Right to Sue Letters based entirely on the charges provided by Plaintiffs. *See* FAC, ECF #34, Exhibit A-1, generally.

### F. Plaintiff's Claims In Their FAC Against McFadden

Plaintiffs only name McFadden in Counts IV, V, VI and VII of the FAC. The counts against McFadden are as follows:

- Count IV for "Deprivation of Rights" under 42 USC §1983. Plaintiffs claim that "Defendants [including McFadden]. . . were City employees acting in their official capacity" and that "Defendants unlawfully deprived Plaintiffs of their Constitutional rights" by *See* FAC, ECF #34 at ¶¶148-149. Plaintiffs allege, among other conduct, that Defendants were "each . . . engaged in selectively treating Plaintiffs less favorably based on their race compared with other similarly situated employees/" *Id.* at ¶150. Plaintiffs do not specify *what* conduct or treatment by McFadden treated them less favorably.

- Count V for "Aiding, Abetting, Coercing, and Compelling Violations of R.C. Chapter 4122" under R.C. 4112.02(J). Plaintiffs claim Defendants Ginther, Pettus, Clark, Sarff, Bourke, and McHenry were "each involved in the receipt of complaints about and involving McFadden, who herself was personally involved in the pervasive activity . . . including ongoing efforts to perpetuate her race discrimination and retaliation . . ." *Id.* at ¶161. Plaintiffs make no specific allegations regarding the conduct of McFadden (or any

7

other Defendant) as to the "aiding, abetting, compelling, and coercing" of unspecified violations of R.C. 4112 *et seq.*

- Count VI for "Conspiracy to Violate Civil Rights" under 42 USC § 1985(2). Plaintiffs allege the individual Defendants, including McFadden, "conspired to for the purpose of impeding, hindering, obstructing, or defeating . . . the due course of justice in the State of Ohio with intent to deny Plaintiffs . . . the equal protection of the laws, or to injure them or their property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of all the laws." *Id.* at ¶167. Plaintiffs make no specific allegations as to what conduct by any Defendant constitutes conspiracy to violate their civil rights.

- Count VII for "Neglect to Prevent Conspiracy to Violate Civil Rights" under 42 USC §1985. Count VII is the shortest and most vague of Plaintiffs' claims. Count VII alleges that "Defendants, having knowledge that any of the wrongs conspired to be done . . . were about to be committed" and neglected to "aid in preventing commission of the same." *Id.* at ¶174. Plaintiff makes no specification regarding which Defendants conducted which actions to "neglect to prevent conspiracy" to violate their civil rights.

### III.  LAW AND ARGUMENT

#### A.  Fed. R. Civ. P. 12(c) Standard

Fed. R. Civ. P. 12(c) states that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." The standard of review of a motion for judgment on the pleadings is the same as a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). The nonmoving party must allege facts that if true, are sufficient to "state a claim that is plausible on

8

its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

      **B.**     **Plaintiffs' FAC does not plead any actionable claim against McFadden for violations of R.C. 4112.02(J).**

Plaintiff cannot sustain a claim against McFadden pursuant to R.C. 4112.02(J). R.C. 4112.02(J) states that it shall be an "unlawful discriminatory practice . . . [f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with this chapter or . . . to attempt directly or indirectly to commit any act by this section to be an unlawful discriminatory practice." Plaintiffs' FAC focuses on the "aid, abet, incite, compel or coerce" conduct in the statute. But Plaintiffs' R.C. 4112.02(J) claim suffers from two fatal flaws: (1) it is untimely as filed; and (2) it fails to plead McFadden aided, abetted etc. any violation of R.C. 4112.

        1.     <u>Plaintiffs' R.C. 4112.02 claims as to McFadden are untimely under the statute of limitations for R.C. Chapter 4112 claims.</u>

Plaintiffs' FAC was filed past the deadline provided in R.C. 4112.052(C). R.C. 4112.052(C) provides that "a civil action brought under this section shall be filed *within two years after the alleged unlawful discriminatory practice was committed.*" *Id.* (emphasis added). The time period may be tolled where either of the following apply:

> (a) If a charge that is based, in whole or in part, on the same allegations and practices was filed under section 4112.051 of the Revised Code less than sixty days before the time period specified under that section expires, the time period to file a civil action is tolled for the period beginning on the date the charge was filed and ending on the date that is sixty days after the charge is no longer pending with the commission.
>
> (b) If a charge that is based, in whole or in part, on the same allegations and practices was filed under section 4112.051 of the

9

> Revised Code sixty or more days before the time period specified under that section expires, the time period to file a civil action is tolled for the period beginning on the date the charge was filed and ending on the date the charge is no longer pending with the commission.

R.C. 4112.051 refers to charges filed with the Ohio Civil Rights Commission. *See.* R.C. 4112.051(C). The statute is silent as to retroactive application.

R.C. 4112 was amended by the passage of H.B. 352 which went into effect on April 15, 2021. Prior to the April 15, 2021 amendment, R.C. 4112 "required an employee claiming workplace discrimination to bring his or her civil action within six years of the accrual of the claim." *Burch v. Ohio Farmers Ins. Co.*, 211 N.E.2d 202, 2023-Ohio-912 (5th Dist.), citing *Cosgrove v. Williamsburg of Cincinnati Mgt. Co.*, 70 Ohio St.3d 281, 638 N.E.2d 991 (1994) ("R.C. 4112.99 is a remedial statute, and is thus subject to R.C. 2305.07's six-year statute of limitations.") R.C. 2305.07(B) states that "an action . . . upon a liability created by statute other than a forfeiture or penalty . . . shall be brought within six years after the cause of action accrued." *Id.* A cause of action has "accrued" within the meaning of the pre-2021 R.C. 4112.02 "at the time a wrongful act is committed." *Moore v. Dep't of Rehabilitation and Correction*, 10th Dist. Franklin No. 10AP-732, 2011 WL 1225466, citing *Williams v. Bur. of Workers' Comp.*, 10th Dist. No. 09AP1076, 2010-Ohio-3210.

Whether Plaintiffs use the two-year or the six-year deadline, their claims against McFadden are untimely. Under the two-year deadline, Plaintiffs' cause of action must be filed two years after the last discriminatory *act*. Each individual act will start a "new clock for filing charges alleging that act." *Yovanno v. Ryder Sys., Inc.*, 9th Dist. Summit No. 21528, 2003 WL 22956756, citing *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). The clock begins to run when the discriminatory act occurs, not when the

*effects* of the discriminatory act are felt by the claimant. *Id.*, citing *Morgan*, 536 U.S. at 122. Under the six-year deadline, Plaintiffs' cause of action must be filed six year from "the time a wrongful act is committed." *Moore v. Dep't of Rehabilitation and Correction*, 10th Dist. Franklin No. 10AP-732, 2011 WL 1225466, citing *Williams v. Bur. of Workers' Comp.*, 10th Dist. No. 09AP1076, 2010-Ohio-3210. Both deadlines are calculated based on the last *act* of discrimination.

The statute of limitations for R.C. 4112.02(J) begins to run on Plaintiffs' claims *no later than* January 25, 2017. The last discriminatory *act* or wrongful *act* alleged by the FAC occurs on January 25, 2017 when Plaintiff Tate alleged that on or about January 25, 2017, McFadden met with him regarding his performance evaluation and that he would receive a "*more favorable* evaluation by Defendant McFadden because he is an African American." *See* FAC at ¶¶32-36 (emphasis added).[3]

Every allegation regarding McFadden after January 25, 2017 is limited to the *report* or *effects* of the discrimination. On March 7, 2017 Grizzell requested an I.A.B. investigation and on March 12, 2017 Grizzell removed McFadden from her position as the Zone 2 patrol lieutenant. *See* FAC, ECF #34 at Exhibit B, PageID #381-402. These are the *effects* or consequences of alleged actions.

Plaintiffs Johnson and Morefield allege that on or about March 6, 2017, they *reported* they were victims of "a hostile work environment based on race." The FAC does not state when the comments occurred, only when they were reported. *See* FAC at ¶¶36, 41. Plaintiff Jeff Kasza alleges that in on or about June 2017, he *reported* he had been "a victim of a hostile work

---

[3] Defendant McFadden maintains that a more favorable review is unactionable. *See Reeves v. Case W. Res. Univ.*, No. 1:07-CV-1860, 2009 WL 3242049 (N.D. Ohio Sep. 30, 2009). However, this Motion assumes, *arguendo*, that such an act would be actionable for showing the best possible scenario for Plaintiffs' statute of limitations.

11

environment based on race." *Id.* ¶46. The FAC does not state when the comments or conduct occurred, only when they were reported. Pursuant to the FAC, the last actionable, discriminatory *act* occurred January 25, 2017. Two years after January 25, 2017 is January 25, 2019 and six years after is January 25, 2023. Plaintiffs filed their Complaint on February 1, 2023. The claims against McFadden for R.C. 4112.02(J) in the FAC are therefore untimely.

Plaintiffs will allege that the FAC alleges conduct by McFadden after January 25, 2017 but this conduct is unrelated to claims of employment discrimination. R.C. Chapter 4112 is a section of the Ohio Revised Code about *employment* claims – claims regarding McFadden's conduct where she was *not* supervising or employing Plaintiffs are inappropriate for a claim under R.C. 4112.02(J). Indeed, the 2021 revisions to Chapter 4112 were intended to match Ohio's statutes to federal employment discrimination law. *Chulsky*, 583 F. Supp.3d at 1087. Plaintiffs allege that McFadden authored a book that "publicly disparaged" them; that knowledge of the book "became widely known within the police department" and this knowledge "created an ongoing, hostile work environment." *See* FAC, ECF #34 at ¶74. But McFadden's book, authored outside the scope of her employment, does not constitute an actionable claim under R.C. 4112.02(J).

        2.    <u>Plaintiffs have not properly pleaded a violation of R.C. 4112.02(J) against McFadden.</u>

Even if Plaintiffs argue that their claims are spared by the statute of limitations, Plaintiffs have not pleaded a proper claim under R.C. 4112.02(J). The language of R.C. 4112.02(J) states that it shall be an "unlawful discriminatory practice . . . [f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with this chapter or . . . to attempt

12

directly or indirectly to commit any act by this section to be an unlawful discriminatory practice."

This language of "sub-section (J) bases a person's liability on actually facilitating *another's* active violation of Ohio Rev. Code §4112.02." *Chulsky v. Golden Corral Corp.*, 583 F.Supp.3d 1059 (2022), citing *Pittman v. Parillo*, No. L-16-1140, 2017 WL 1422891 at *18 (Ohio Ct. App. Apr. 21, 2017) (emphasis in original). It is, after all, "an aiding and abetting" statute. *Id.*, citing *Cole v. Seafare Enters.*, No. C-950157, 1996 WL 60970 at *3 (Ohio Ct. App. Feb. 14, 1996). In an analogous case granting defendant's motion to dismiss, *Chulsky* found plaintiff failed to state a claim against her supervisor in her complaint where she failed to allege that the supervisor played any role in convincing Golden Corral not to discipline him. *Id.* at 1087 ("this allegation . . . fails to state a claim against Parry . . . . because, while Parry of course *may* have played a part in Golden Corral's decision not to discipline him . . . Chulsky levies no factual allegations suggesting that he in fact *did*.") *Chulsky* held that "[o]verall, subsection (J) is understood as a derivative liability section (i.e., it provides for liability against those who assist *another* in a violation)." *Id.* at 1089 (emphasis in original).

Plaintiffs' FAC falls short of the pleading requirement for a R.C. 4112.02(J) claim. Plaintiffs' only allegation as to McFadden in Count V is:

> Defendants Ginther, Pettus, Clark, Sarff, Bourke, and Mc Henry were each involved in the receipt of complaints about and involving McFadden, who herself was personally involved in the pervasive activity set forth herein, to including [sic] ongoing efforts to perpetuate her race discrimination and retaliation . . . and each individual Defendant took active and concerted steps to see that those complaints were not investigated, to further direct and see that those making the complaints were punished or otherwise retaliated against . . . .

13

*See* FAC, ECF #34 at ¶161. Plaintiffs allege that McFadden was "personally involved" in discriminatory actions but make no allegations that she *assisted another* in a violation. If anything, the FAC alleges that McFadden was "aided and abetted." This is not a proper claim under R.C. 4112.02(J). Plaintiffs have swept McFadden into Count V where they are unable to bring a claim against her pursuant to R.C. 4112.02(A) with the 2021 revision to Chapter 4112. This claim fails as a matter of law.

      **C.**      **Plaintiffs' Counts IV, VI, and VII against McFadden are time-barred.**

Claims pursuant to §1983, §1985, and §1986 against McFadden were filed outside the statute of limitations. Statutes of limitation "are not simply technicalities." *Easterly v. Budd*, N.D. Ohio No. 4:06-cv-00186, 2006 WL 2404143 at *5, (Aug. 16, 2006), citing *Bd. of Regents v. Tomanio*, 446 U.S. 478, 487 (1980). They "have long been respected as fundamental to a well-ordered judicial system . . . [and] are established in recognition that it would be 'unjust to fail to put the adversary on notice to defend within a specified period of time' and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" *Id.*, citing *U.S. v. Kubrick*, 444 U.S. 111, 117 (1979). As such, permitting Plaintiffs to bring claims based on alleged conduct nearly a decade ago is against the interests of justice.

For claims under §1983, the statute does not impose a particular limitations period but the "'general' or 'residual' state statute of limitations applicable to tort and personal injury claims." *Fulmer v. Myers*, S.D. Ohio No. 2:16-cv-79, 2016 WL 4208143 at *4 (Aug. 10, 2016). In Ohio, tort and personal injury claims have a two-year statute of limitations. *Id.*, citing R.C. 2305.10(A). While state law "governs the length of the limitations period in §1983 actions, federal law governs the question of when the limitations period begins to run." *Id.*, citing *Harris v. City of Canton*, 725 F.2d 371, 372 (6th Cir. 1984). For claims under §1983, the statute of limitations

14

"begins to run when the Plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.*, citing *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984).

Similarly, for civil conspiracy claims brought pursuant to §1985, the statute does not contain a statute of limitations and courts have "borrowed the applicable state created limitations for actions brought under §1985." *Harris v. Board of Educ. of Columbus, Ohio City School Dist.*, 798 F.Supp. 1331, 77 Ed. Law Rep. 800 (S.D. Ohio 1992), citing *Amsler v. Smith-Lustig Paper Box Mfg. Co.*, 908 F.2d 972 (6th Cir. 1990). The limitations period for §1985 claims in Ohio is two years. *Id.* For claims under §1986, the statute provides the specific statute of limitations: one year. *See* 42 USC §1986 ("But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.") *See also Harris v. City of Canton*, 725 F.2d 371 (6th Cir. 1984). For both §1985 and §1986 the cause of action accrues "when the plaintiff knows or has reason to know of the injury that is the basis of his action." *Carter v. Nat'l City Bank*, S.D. Ohio No. 1:17-cv-508, 2018 WL 3543699 at *5 (Jul. 23, 2018), citing *Dotson v. Lane*, 360 Fed. Appx. 617, 620 n.2 (6th Cir. 2010).

Plaintiffs filed their original Complaint on February 1, 2023. Any §1983 or §1985 claim based on conduct occurring prior to February 1, 2021 is time-barred by the two-year statute of limitations. Any §1986 claim based on conduct occurring prior to February 1, 2022 is time-barred by the one-year statute of limitations. Plaintiffs' FAC relies on conduct by McFadden that occurred between 2016 and 2017. *See* FAC, ECF #34 at ¶¶29-57. Plaintiffs claim to have been immediately aware of the allegedly actionable conduct where they reported the conduct no later than June 2017. *Id.* at ¶¶ 36, 41, 46. Any investigation into McFadden's conduct was concluded on February 9, 2018. *Id.* at ¶61. McFadden was reinstated, according to the FAC, on October 9, 2018. *Id.* ¶¶67-69. Any claim pursuant to §1983 or §1983 must have been filed *no later* than

October 9, 2020. Any claim pursuant to §1986 must have been filed *no later* than October 9, 2019. Plaintiffs' constitutional claims are untimely.

IV.    **CONCLUSION**

For the foregoing reasons and for the reasons cited by the City Defendants in their Motion for Judgment on the Pleadings, Defendant McFadden is entitled to judgment on the pleadings for the claims against her.

Respectfully submitted,

*/s/ Kaitlin L. Madigan*
Yazan S. Ashrawi (0089565)
Kaitlin L. Madigan (0087891)
FROST BROWN TODD LLP
10 W. Broad Street, Suite 2300
Columbus, OH 43215
614-464-1211 / 614-464-1737 (Fax)
yashrawi@fbtlaw.com
kmadigan@fbtlaw.com

*Attorneys for Defendant Melissa McFadden*

**CERTIFICATE OF SERVICE**

On this 27th day of December, 2023, a true and accurate copy of the foregoing was filed with the Court and served by operation of this Court's electronic filing system on all parties who have filed an appearance in this matter.

*/s/ Kaitlin L. Madigan*
Kaitlin L. Madigan     (0087891)

0127727.0767391  4871-3876-3928v1